Morton B. Silberman, J.
This is a taxpayer’s action brought pursuant to section 51 of the General Municipal Law. Defendants move to dismiss the complaint upon various grounds, and for other alternative relief. Plaintiffs cross-move for partial summary judgment.
On October 21, 1974, the Rockland County Legislature adopted a resolution known as resolution No 751 of 1974.[1] The *673 resolution provided for the transfer of $3,900 "to disseminate information to voters concerning the proposed referendum on the County Constitution which is on the ballot for the General Election to be held November 5, 1974.”
Upon the authority of the foregoing resolution, a pamphlet was printed on county paper, utilizing county duplicating equipment and county employees. In addition, the county paid the sum of $543.41 to a private firm for the addressing of 63,931 of such pamphlets.
In essence, plaintiffs contend that the expenses incurred by the county in connection with the production and distribution of the pamphlet constituted a "waste” of public funds, within the purview of section 51 of the General Municipal Law. Plaintiffs seek judgment compelling defendants to restore to the Rockland County Treasury the sum of $4,400 as compensatory damages.[2]
The pivotal issue is whether a County Legislature has the legal authority to expend public funds for literature which supports or opposes legislation to be voted upon by the public.
There appears to be no New York authority directly in point. The reported authorities in jurisdictions other than New York are in conflict (see 64 CJS, Municipal Corporations, § 1838, pp 342-343, and authorities cited therein;, see, also, 15 McQuillan, Municipal Corporations [rev 1970], § 39.23). The rationale of those decisions which have frowned upon the practice has been that the use of public funds to obtain a favorable vote on a particular issue is manifestly unfair and unjust to voters opposed thereto (see 64 CJS, Municipal Corporations, § 1838, supra, p 343, n 43).
In the within action, the defendant legislators authorized an expenditure of public funds for the stated purpose "to disseminate information to the voters on the proposed referendum on the County Constitution.” Defendants have not cited any authority in this State, either decisional or statutory, which confers upon a County Legislature the authority to expend public funds for such a purpose. The court does not believe that there is any authority for such an expenditure.
The expenditure of public funds for the production and distribution of so-called "information” pamphlets is fraught *674 with danger. To plane in the hands of a majority of a County Legislature the unlimited power to expend public funds for circulating literature favoring or opposing an issue inevitably will lead to dangerous abuses and great mischief. This is made abundantly clear by the very pamphlet which is the subject of this litigation. This is a pamphlet which was totally biased and one-sided in content. This pamphlet did not even purport to present the pros and cons regarding adoption of a proposed County Constitution. This pamphlet was devoted to a presentation solely of the alleged benefits of the proposed Constitution. It recited only reasons ■ why the voters should vote in favor of it. In fact, in large print it urged "Vote Yes on November 5.” It prominently displayed the names of private organizations said to be in favor of the said Constitution, but did not include the names of any organizations or groups opposed to it or their reasons for opposing its adoption. Additionally, at no place on the pamphlet is there any indication that it was being paid for and distributed by the county. To the contrary, at the end of the pamphlet there appears the name of "Non-Partisan Constitution Comm.” Clearly, the inference intended by the placing of such name as the sponsor of the pamphlet was to indicate that same was not being published by the county, but by some alleged independent group, even though the county, in fact, was paying for its production and distribution.
Public funds may not and should not be at the disposal of legislators for such purposes. The use of public funds and of county supplies, equipment and employees in the production and distribution of the within pamphlet was not authorized by law and, in the court’s opinion, constituted an illegal expenditure of public funds.
This, however, does not, in itself, entitle plaintiffs to judgment against all of the defendants herein. A defendant legislator may not be held answerable in damages merely because he voted in favor of adoption of the resolution herein for the transfer of funds "to disseminate information to voters concerning the proposed referendum on the County Constitution.” In doing so, he could have voted in good faith, in the mistaken belief that the Legislature had the legal authority to expend funds for a truly "informational” pamphlet and that the funds would, in fact, be used for such a pamphlet. Liability in this action may be imposed only upon those defendants who actually participated in or who otherwise assented to the use of public funds and/or supplies, equipment and employees for *675 the production or distribution of this particular pamphlet (see Daly v Haight, 170 App Div 469, affd 224 NY 726). The individual liability of the defendants cannot be determined on the conflicting affidavits submitted on this motion. Such a determination can only be made after a plenary trial.
[Further material is omitted from publication.]

. When the resolution was adopted, defendants Scheinert, Grant, Crable, Good-friend, Colman, Connor, Damiani, Fallon, Gumper, Meehan, Rotella, Sullivan and Zebrowski were members of the Rockland County Legislature, and each of them voted in favor of such resolution. Defendants Crable, Goodfriend, Colman, Damiani, Gum-per, Meehan and Rotella have not been served with process. Defendant Seigerman is the Clerk to the Rockland County Legislature. Defendant English is the Deputy Clerk.

. There is also a claim in the sum of $1,000,000 for punitive damages. However, section 51 of the General Municipal Law, which authorizes maintenance of a taxpayer’s action, makes no provision for an award of punitive damages.